UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARTHUR S. WEST,

    Plaintiff,

        v.

PIERCE R. HORNER, et al.,

    Defendants.

Civil Action No. 09-2224 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff Arthur West brings this lawsuit against various federal and state officials in charge of proposing and approving road-construction projects in Northern Virginia. Because the particular project about which he complains has been abandoned, his current suit is moot. In addition, as the project proposed in its place has not yet received final agency approval, Plaintiff cannot amend his Complaint to proceed on this new challenge either.

### I. Factual Background

The National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, requires federal agencies to consider the environmental impact of "major Federal action[s] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). Certain state-initiated modifications to the interstate highway system – including the construction of new entrances, exits, and interchanges – require the approval of the Federal Highway Administration (FHWA), and thus may constitute "major Federal action" subject to NEPA's requirements. See 23 U.S.C. § 111(a); West v. Secretary of the Dep't of Transportation, 206 F.3d 920, 926 (9th Cir. 2000). Before FHWA can approve such a road-construction project, NEPA requires the project's proponents to prepare one of three levels of documentation based on the significance of the

1

project's impact on the environment. See 23 C.F.R. § 771.115; 40 C.F.R. § 1507.3(b). Projects that significantly affect the environment require the preparation of an Environmental Impact Statement (EIS). See 42 U.S.C. § 4332(C). Projects whose environmental impact is not clearly established require the preparation of an Environmental Assessment (EA), followed by either a finding of "no significant impact" on the environment (FONSI), or the subsequent preparation of an EIS. See 23 C.F.R. § 771.115; 40 C.F.R. §§ 1508.9, 1508.13. Projects that "do not individually or cumulatively have a significant environmental effect" may proceed under a "Categorical Exclusion" (CE) from NEPA review, in which case neither an EIS nor an EA need be prepared. See 23 C.F.R. §§ 771.115, 771.117; 40 C.F.R. §§ 1508.4, 1507.3(b)(2)(ii).

This case arises from a Virginia Department of Transportation (VDOT) proposal for construction work to Interstates 95 and 395 in Northern Virginia: the I-95/I-395 High Occupancy Vehicle/High Occupancy Toll Lanes Project, referred to here as the "2009 Project." See Compl., ¶ 1; State Def. Mot. at 2. On January 7, 2009, the FHWA approved the 2009 Project by CE. See Fed. Def. Mot., Exh. 3 (Declaration of Edward Sundra), ¶ 3.

*Pro se* Plaintiff Arthur West is a resident of the State of Washington and an occasional visitor to the Washington, D.C., metropolitan area who has "travelled repeatedly upon the I 95-395 Interstate and the Shirlington Interchange" in Northern Virginia. Compl., ¶ 3.1. He claims that the federal and state officials[1] who approved the 2009 Project failed to comply with NEPA by improperly issuing a CE and not preparing an EIS or an EA with a finding of "no significant impact." See Compl., ¶ 5.1. He also asserts that Defendants "improperly delegate[ed] NEPA authority" in conducting their environmental review. Id., ¶ 6.1.

---

[1] Federal Defendants are the Federal Highway Administration and U.S. Secretary of Transportation Ray LaHood. State Defendants are former Virginia Transportation Secretary Pierce Homer (whom Plaintiff sometimes refers to, including in the case caption, as Pierce "Horner") and former Virginia Department of Transportation Commissioner David Ekern (whom Plaintiff sometimes refers to as David "Ekert").

As relief, Plaintiff seeks a declaratory judgment "declaring the [2009] I 95-395 HOT Lane project CE void, and annulling any delegation of NEPA authority to any private entity[,]" and an injunction "compel[ing Defendants] to revoke the CE for the [2009] I 95-395 project, and [to] comply with the requirements of NEPA in regard to assessment of appropriate traffic, economic, and environmental impacts of the I 95-395 and 495 HOT Lane projects as a whole, and that mitigation measures be considered to reduce resulting traffic impacts upon the City of Alexandria and Arlington County." Id., ¶¶ 7.1, 7.2.

Plaintiff filed his initial Complaint on August 18, 2009, in the U.S. District Court for the Eastern District of Virginia. ECF No. 1. On October 27, 2009, Federal and State Defendants separately moved to dismiss. ECF Nos. 9, 10. In the alternative, Federal Defendants moved to transfer the case to this district on the grounds that Plaintiff's claims could have been brought here and that the interests of justice favored transfer, given the prior filing in this court of another case, then pending before Judge Rosemary Collyer, alleging NEPA claims against the same Federal Defendants arising from the 2009 Project. See ECF Nos. 11, 12; County Board of Arlington v. U.S. Dep't of Transportation, No. 09-cv-1570 (D.D.C.). On November 23, 2009, Judge Anthony Trenga, with the consent of the parties, transferred the case to this district. ECF No. 18.

VDOT has since abandoned the 2009 Project. On February 16, 2011, VDOT informed FHWA that it had withdrawn its proposal to construct the 2009 Project and requested that FHWA consider the CE issued in January 2009 moot. See Sundra Decl., ¶ 7. As a result, on March 3, 2011, FHWA withdrew its approval of the 2009 Project by rescinding the CE. See id., ¶ 8. VDOT instead announced that it is planning a new I-95/I-395 HOV/HOT Lanes Project, referred to here as the "2011 Project." See id., ¶ 6. As of the filing of the Motions to Dismiss in

3

this case, the "Virginia Secretary of Transportation [had] advised that an environmental review of the new project [would] be undertaken," and "FHWA [had] not taken any approval action on any new project."  Id.

On March 14 and 17, 2011, respectively, Federal and State Defendants renewed their Motions to Dismiss.  On April 4, 2011, in response, Plaintiff moved to amend his Complaint.  He now seeks a declaratory judgment to the effect that, *inter alia*, Defendants "failed to comply with the requirements of NEPA in their various HOT Lanes projects" and that they have "attempted to evade the requirements of NEPA by altering their HOT Lanes project in a manner intended to escape review, and [by] attempt[ing] to intimidate and politically stigmatize those seeking judicial review . . . ."  Prop. Am. Compl., ¶ 9.1-9.2.  He additionally seeks to compel Defendants to "formally revoke the CE for the original I 95-395 project, . . . to comply with the requirements of NEPA . . . [and to complete] a comprehensive assessment of reasonable alternatives to, as well as any foreseeable traffic, economic, and environmental impacts of, any future Mega-projects and/or any I-95, I 395 or I-495 HOT Lane projects in Virginia as a whole."  Id., ¶ 9.3.  Plaintiff's Proposed Amended Complaint adds the Department of Defense as a defendant, and seeks to compel the Department to work with Virginia and the State of Washington to "address in a comprehensive manner[] the impacts of the ongoing [Defense Base Closure and Realignment Act] realignments," and to include the impact of BRAC realignments in the "regional EIS documentation" for both states.  Id., ¶ 9.4.  Finally, Plaintiff seeks a declaration that § 2.2-3704 of the Virginia Code is unconstitutional, and an injunction "compel[ling] immediate disclosure of the records requested by Plaintiff from the State of Virginia."  Id., ¶¶ 4.9, 9.5.  He also seeks monetary damages.  Id., ¶ 9.6.

Defendants oppose such an amendment on the ground of futility. More specifically, they maintain that Plaintiff's claims regarding the 2011 Project are not ripe, as there has been no final agency action, and Plaintiff's entirely unrelated claims belong in a separate lawsuit. The Court agrees.[2]

## II.     Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). This standard governs the Court's considerations of Defendants' Motions under both Rules 12(b)(1) and 12(b)(6). See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); Walker v. Jones, 733 F.2d 923, 925-26 (D.C. Cir. 1984) (same). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted).

---

[2] The Court has reviewed Plaintiff's Complaint, Federal Defendants' Motion to Dismiss, State Defendants' Motion to Dismiss, Plaintiff's Motion to Amend and Proposed Amended Complaint, Federal Defendants' Opposition to Plaintiff's Motion to Amend, State Defendants' Opposition to Plaintiff's Motion to Amend, Plaintiff's Opposition to Defendants' Motions to Dismiss/Reply in Support of Amendment, Federal Defendants' Reply in Support of Dismissal, State Defendants' Reply in Support of Dismissal, Federal Defendants' Surreply in Opposition to Amendment, and State Defendants' Surreply in Opposition to Amendment.

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case – a dismissal under Rule 12(b)(1) on ripeness grounds – the court may consider materials outside the pleadings").

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). Although "detailed factual

6

allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

## III. Analysis

The Court will first consider both sets of Defendants' Motions to Dismiss, which relate to the 2009 Project. The Court will next address Plaintiff's Motion to Amend, which concerns the 2011 Project and some other ancillary claims.

### A. Motions to Dismiss

Article III of the United States Constitution limits the jurisdiction of the federal courts to resolving "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. Federal courts therefore lack "the power 'to decide questions that cannot affect the rights of litigants in the case before them,' . . . and [are confined] to resolving "'real and substantial controver[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.""" Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) (internal citations omitted). When a claim becomes moot, federal courts cease to have jurisdiction over it. See id. at 477-78; Columbian Rope Co. v. West, 142 F.3d 1313, 1316 (D.C. Cir. 1998) (federal court must dismiss case as moot when "'events

7

have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future'") (citation omitted).

Defendants argue that because VDOT has withdrawn its proposal and FHWA has rescinded its CE, Plaintiff's claims regarding the 2009 Project are now moot. See Fed. Def. Mot. at 10; State Def. Mot. at 14. Plaintiff responds that his claims are not moot because: "(1) there was a final HOT Lanes project when this action was filed, (2) that in response to litigation (mainly that of Arlington County) the defendants altered their project to avoid the geography of their most politically powerful legal adversary, but continued to advance a virtually identical HOT Lanes proposal for the area outside of Arlington County, and (3) that following the post-litigation alteration of the project to address Arlington County's concerns the defendants have made numerous bellicose pub[l]ic statements inconsistent with their claims of a lack of an existing controversy." Opp. at 5.

The fact that there existed "a final HOT Lanes project when this action was filed" is irrelevant to the question of whether the Court presently has jurisdiction over Plaintiff's claims or whether they have become moot. Article III's case-or-controversy requirement subsists throughout the life of the case: "To sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed[.]" Lewis, 494 U.S. at 477. "If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." McBryde v. Committee to Review Circuit Council Conduct and Disability Orders of Judicial Conference of U.S., 264 F.3d 52, 55 (D.C. Cir. 2001); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'") (quotation omitted).

As the case stands now, FHWA has rescinded its approval (and CE) for the 2009 Project, and VDOT has withdrawn its proposal for that Project as identified in Plaintiff's Complaint. As such, Plaintiff has, without judicial intervention, obtained the same result as if the Court had granted the relief he requests – namely, a declaration that "the I 95-395 HOT Lane[s] project CE [is] void" and "[t]hat the State and Federal defendants be compelled to revoke the CE for the I 95-395 project, and comply with the requirements of NEPA[.]"[3] Compl., ¶¶ 7.1, 7.2. In other words, "any injunction or order declaring [the 2009 CE] illegal would accomplish nothing – amounting to exactly the type of advisory opinion Article III prohibits." Larsen v. U.S. Navy, 525 F.3d 1, 4 (D.C. Cir. 2008). There is no longer a live controversy for which the Court can grant Plaintiff any relief surrounding the 2009 Project; Plaintiff's claims regarding that Project are thus moot. See also County Board of Arlington, at 5 ("Because Defendants have withdrawn their proposal to build HOT lanes that will affect the County of Arlington, the County Board of Arlington no longer has a stake in the outcome of this litigation.").

As to Plaintiff's second argument, even if VDOT did withdraw its proposal for the 2009 Project in response to Arlington County's litigation, that is irrelevant to a mootness analysis. They could have withdrawn it for any reason whatsoever; the point remains that it is withdrawn and no longer presents an actual controversy. Furthermore, that they have proposed a new HOT lanes project that is similar in many respects to the old one does not save Plaintiff's Complaint. As explained in Section III.B, *infra*, the proposed 2011 Project must obtain its own approval as a separate project, and Plaintiff will have the opportunity in the future to maintain any legal challenges he chooses to bring.

---

[3] To the extent Plaintiff references the separate highway I-495 for the first time in his request for relief, the Court notes that he has neither pled any facts nor asserted any claims relating to this interstate highway.

Third, to the extent Defendants have, as Plaintiff claims, made "numerous bellicose pub[l]ic statements" about the HOT Lanes Projects, such statements do not support the existence of an ongoing <u>legal</u> controversy sufficient for Plaintiff's Complaint to survive Defendants' challenge for mootness. In contending generally that a public "controversy" continues to exist over "the issue of what level of NEPA compliance is necessary" for FHWA to approve large-scale road-construction projects such as the I-95/I-395 HOT Lanes Project, <u>see</u> Opp. at 2, Plaintiff invokes the popular rather than legal meaning of the term. There are public controversies over many hot-button issues, but that does not somehow magically confer federal jurisdiction. Federal courts "are not authorized to review agency policy choices in the abstract," <u>Fund for Animals, Inc. v. U.S. Bureau of Land Management</u>, 460 F.3d 13, 18 (D.C. Cir. 2006), and may not issue "opinion[s] advising what the law would be upon a hypothetical state of facts." <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 241 (1937). Regardless of whether traffic congestion in Northern Virginia remains a controversial issue, Plaintiff's claims regarding the HOT Lanes Project approved in 2009 and terminated in 2011 does not present an ongoing legal controversy.

Nor does Plaintiff's Complaint survive under any exception to the mootness doctrine. Although the bar for dismissal for mootness is higher in cases where the moving party has voluntarily ceased the conduct about which a plaintiff complains, such voluntary cessation will not preclude a finding of mootness where (1) "'there is no reasonable expectation . . . that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979) (quotation omitted).

Defendants' Motions succeed on each of these tests. First, Defendants have withdrawn their proposal for the 2009 Project, and FHWA has rescinded approval by the CE that Plaintiff alleges it issued in violation of NEPA. In the absence of FHWA approval, the Project cannot proceed. Given that VDOT has announced it will propose and seek approval of a new HOT lanes project in Northern Virginia – and particularly in light of its announcement that it intends to conduct an environmental assessment of the new project – the Court finds that there is no reasonable expectation that Defendants will seek to proceed by CE with the now-abandoned 2009 Project that is the sole subject of Plaintiff's Complaint. As the Project has been abandoned, the Court further finds that interim events have completely eradicated the effect of any NEPA violation Plaintiff's alleges.

In addition, Plaintiff's Complaint does not allege a claim that is capable of repetition yet evading review. See Opp. at 5 ("the complained of conduct has already threatened to recur" and "can recur free from any chance of judicial review"). A party invoking this exception to the mootness doctrine must show: "'(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.'" Del Monte Fresh Produce Co. v. U.S., 570 F.3d 316, 322 (D.C. Cir. 2009) (quoting Clarke v. U.S., 915 F.2d 699, 704 (D.C. Cir. 1990) (*en banc*)). Plaintiff fails prong one.

The D.C. Circuit has previously held that "agency actions of less than two years' duration cannot be 'fully litigated' prior to cessation or expiration, so long as the short duration is typical of the challenged action." Del Monte, 570 F.3d at 322. Courts in this Circuit have applied prong one of this exception in cases involving temporary or expiring agency action such as the issuance of time-limited licenses and the entry into short-term contracts. See id. (involving challenge to

timeliness of agency response to application for one-year license); Public Utilities Comm'n of the State of California v. F.E.R.C., 236 F.3d 708 (D.C. Cir. 2001) (involving FERC orders relating to short-term sales contracts). The facts of this case are easily distinguishable from the facts there. FHWA approval of an interstate-highway construction project does not involve any abbreviated event; rather, the decision to issue a categorical exclusion from NEPA review could be challenged at any time subject only to the applicable statute of limitations.

Plaintiff cannot ultimately argue that by abandoning the 2009 Project in response to Arlington County's lawsuit and proposing a new project for approval, Defendants are engaging in repetitious NEPA violations while evading judicial review. Even assuming that FHWA's approval of the 2009 Project pursuant to a CE was a violation of NEPA, VDOT never succeeded in completing the construction without an environmental review. On the contrary, the Project has been abandoned altogether. In the event Defendants fail to abide by NEPA's requirements in proposing and approving the new 2011 Project, Plaintiff may seek judicial review at that time. Nothing has been foreclosed to him.

The claims in the current Complaint, accordingly, are moot.

B.  Motion to Amend

Following Defendants' decision to abandon the 2009 Project, Plaintiff moved to amend his Complaint to allege a violation of NEPA with respect to VDOT's newly proposed 2011 HOT Lanes Project, see Prop. Am. Compl., ¶¶ 4.2, 4.4, 5.1, as well as to assert, for the first time, claims related to military base closures under the amended Defense Base Closure and Realignment Act (BRAC), see Pub. L. No. 107-107, §§ 3001-3008, 115 Stat. 1012, 1342-53, both in Northern Virginia and in Western Washington State, and claims arising from the denial of a Freedom of Information Act claim he filed under Virginia law. See Prop. Am. Compl., ¶¶ 4.8-4.12. Defendants oppose amendment.

While Plaintiff's claims regarding the 2009 Project are now moot, his proposed new claims regarding VDOT's 2011 Project suffer from the opposite problem: a lack of finality, which renders amendment futile. See James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C.Cir.1996) (court can deny motion to amend complaint as futile if proposed claim would not survive motion to dismiss). A NEPA claim is subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). See Theodore Roosevelt Conservation Partnership v. Salazar, 616 F.3d 497, 507 (D.C. Cir. 2010). Unless otherwise provided by law, judicial review of claims under the APA is limited to final agency action. See 5 U.S.C. § 704. The doctrine of finality prevents courts from reviewing agency decisions before they are final so as to "avoid premature intervention in the administrative process." CSI Aviation Services, Inc. v. U.S. Dept. of Transportation, 637 F.3d 408, 411 (D.C. Cir. 2011). Absent facts sufficient to allege a final agency action, a complaint will be dismissed for failure to state a claim. See Oryszak v. Sullivan, 576 F.3d 522, 525 n.2 (D.C. Cir. 2009) ("the provision of the APA limiting judicial review of 'final agency action,' 5 U.S.C. § 704, goes not to whether the court has jurisdiction but to whether the plaintiff has a cause of action"); Sierra Club v. Jackson, No. 10-5280, 2011 WL 2600841, *5 (D.C. Cir. July 1, 2011) (affirming Oryszak; Rule 12(b)(6) provides legal standard).

An agency action is deemed final (1) when it "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) when the decision taken is one by which "'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (internal citations omitted); see also Franklin v. Massachusetts, 505 U.S. 788, 797 (1992) (to determine finality, the "core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties").

13

Plaintiff has not pled, nor does the evidence before the Court suggest that he could plead, that FHWA has taken any final agency action or issued a final decision with respect to the 2011 Project. Unlike the 2009 Project, Plaintiff does not allege that FHWA has issued a Categorical Exclusion from NEPA review for the 2011 Project. Rather, he identifies the 2011 Project as "the new proposed HOT Lanes project." Prop. Am. Compl., ¶ 1.4 (emphasis added). The uncontroverted evidence before the Court indicates that the 2009 CE has been rescinded, FHWA has not yet approved the 2011 Project, and VDOT has announced its intention to conduct an environmental assessment. Plaintiff's Proposed Amended Complaint thus contains no allegations of final agency action with respect to the 2011 Project that this Court could properly review under the APA; it is, consequently, premature.

Plaintiff's Proposed Amended Complaint also contains entirely new causes of action that are entirely unrelated to his initial Complaint. These amorphous claims include alleged NEPA violations by the Department of Defense relating to the impact of BRAC closures on traffic in Northern Virginia and Western Washington, see Prop. Am. Compl., ¶ 4.10-4.14; "42 USC Claims," including "denial of equal protection," "denial of information necessary for plaintiff to exercise his [F]irst Amendment rights," and "attempting to abridge his access to the court[,]" see id., at 6; and a claim that § 2.2-3704 of the Virginia Code is unconstitutional. Id.

Beyond the fact that each of these claims appears to relate, to some degree, to Plaintiff's general dissatisfaction with the impact of road-construction projects on traffic in the various locations where he drives, the purported causes of action appearing for the first time in Plaintiff's Proposed Amended Complaint bear no legal relationship to the 2009 Project NEPA claim that was the subject of his initial Complaint. They are therefore not properly alleged through amendment of Plaintiff's initial, now moot, Complaint.

14

In issuing its ruling, the Court does not reach the merits of the new claims alleged in Plaintiff's Proposed Amended Complaint. Indeed, the Court's denial of leave to amend is without prejudice to Plaintiff. He is free to file a new lawsuit if and when Defendants take a final agency action that violates NEPA or to allege in a proper forum the other federal and state law claims that he sought to assert for the first time in his Proposed Amended Complaint.

## IV. Conclusion

For the reasons articulated herein, an Order accompanying this Memorandum Opinion will grant Defendants' Motions to Dismiss and deny Plaintiff's Motion to Amend.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 14, 2011